Ezra Earl MAGLOTHIN, Jr. *v.* STATE of Arkansas

CA CR 95-473                                    924 S.W.2d 468

Court of Appeals of Arkansas
Division III
Opinion delivered June 19, 1996
[Petition for rehearing denied August 14, 1996.]

*Woodruff & Huckaby, P.A.*, by: *Curt Huckaby*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. Appellant was convicted by a jury of four counts of theft of property and sentenced to twelve years. On appeal, appellant argues that the trial court erred in denying his motion to dismiss. We disagree and affirm.

On November 4, 1993, appellant and his accountant, Glen Reed, were indicted by a federal grand jury charging them with multiple counts of mail fraud, one count of wire fraud, obstruction of justice, theft, and two counts of money laundering. Appellant was acquitted of all charges. At Mr. Reed's trial, appellant testified against Reed and in doing so incriminated himself. Two months later, the State of Arkansas charged appellant with four counts of theft. Appellant filed a pretrial motion to dismiss arguing that he was granted "use immunity" when he testified against his accountant; and therefore, he could not be prosecuted based on any testimony derived from that previous proceeding. Appellant asserted that the state did not have any evidence outside of the immunized testimony to charge him with theft. The trial court denied appellant's motion.

On appeal, appellant argues that the trial court erred in denying his motion to dismiss based on the finding that no immunity was granted. We disagree.

The burden of proving an agreement granting immunity and appellant's compliance with it rested upon appellant. *Young v. State*, 316 Ark. 225, 871 S.W.2d 225 (1994). The determination of whether an agreement was reached granting immunity is a question of fact. And the trial court's decision will not be reversed unless clearly against the preponderance of the evidence. *Riddling v. State*, 19 Ark. App. 231, 719 S.W.2d 1 (1986).

Title 18 of the United States Code, sections 6002 and 6003(a) provide:

§ 6002. Immunity generally

Whenever a witness refuses on the basis of his privilege against self-incrimination, to testify or provide other information in proceeding before or ancillary to–

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or an information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

§ 6003. Court and grand jury proceedings

(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this title.

As developed in the context of formal grants of immunity, transactional immunity accords full protection from prosecution for the offense to which the immunized testimony relates. Use immunity is more limited: it prohibits the use, in a criminal prose-

cution, of any evidence derived directly or indirectly from the information provided to the government. *U.S.* v. *Harvey*, 900 F.2d 1253 (8th Cir. 1990).

In this case, it is clear that appellant was not granted immunity under 18 U.S.C. §§ 6002 and 6003; in fact, we agree with the trial court's ruling that appellant has failed to prove that he had an agreement granting any type of immunity.

Appellant's attorney, Jim Rose III, testified that appellant had been placed under subpoena by the U.S. Attorney to testify for the government in the trial of appellant's accountant. Mr. Rose stated that he advised appellant not to testify in the other trial but to assert his Fifth Amendment rights. Mr. Rose continued that he advised U.S. Attorney P.K. Holmes over the phone that appellant was going to assert his Fifth Amendment privilege unless granted "full immunity." Mr. Rose said that the next morning Mr. Holmes offered appellant "use immunity." According to Mr. Rose, he advised appellant to take this immunity and testify. Mr. Rose testified that appellant accepted the "use immunity" offered by Mr. Holmes.

Mr. Holmes testified, however, that he did not recall having any discussion with Mr. Rose about full immunity over the telephone. He did recall speaking with Mr. Rose the afternoon before the trial about full immunity, but said he rejected the request because he was not about to immunize appellant for something "he had no knowledge of." Mr. Holmes stated that he did recall telling Mr. Rose that he had no intention of prosecuting appellant on anything that arose out of the trial testimony. Mr. Holmes testified that he had absolutely no recollection of telling Mr. Rose that he was going to give appellant "use immunity".

Claude Hawkins, co-counsel with Mr. Holmes, testified that he had no understanding that appellant was testifying under a grant of any type of immunity.

Mark Grisham, with the FBI, testified that he was involved in the Glen Reed trial and was present during conversations that Mr. Holmes, Mr. Rose and appellant had prior to appellant's testimony. He said that he had no knowledge of immunity and was not aware that appellant was testifying with immunity.

Judge Franklin Waters, the judge presiding over the Reed trial, was interviewed and stated that he was not aware that appellant was

testifying under any type of immunity when he testified in the Reed case. Judge Waters also submitted an affidavit in which he noted that he did not issue an order granting appellant "use immunity" pursuant to 18 USC § 6002 to compel his testimony.

The trial court found:

> There was never a meeting of the minds in the Court's judgment. The Court is not ruling that there was a Waiver. The Court's ruling is simply there was never any agreement between Mr. Maglothin and the United States Government to immunize his testimony.

Based on the conflicting evidence in the record, we cannot say that the trial court's decision is clearly against the preponderance of the evidence.

Affirmed.

ROBBINS and NEAL, JJ., agree.